GEORGEA BLACK McKINLEY *v.* HARLAN H.
HOLLEMAN ET AL

5-4429                                    422 S. W. 2d 665

Opinion delivered January 8, 1967

*George E. Pike,* for appellant.

*McKnight & Blackburn,* for appellees.

J. FRED JONES, Justice. The appellant, Georgea Black McKinley, owned a large tract of land in Jefferson County and in February 1964 sold it to M & H Farms, Inc. for $850,000.00. The sum of $150,000.00 on the purchase price was paid in cash. A note was executed for the balance of the purchase price in the amount of $700,000.00, a deed was executed and delivered and a lien was retained in the deed to secure the payment of the balance of the purchase price according to the terms of the note, as follows:

"On or before the first day of March 1965, 1966, 1967, 1968, 1969, the sum of Fourteen Thousand and No/100 Dollars ($14,000.00), being interest on the principal sum of $700,000.00 purchase money indebtedness computed at the rate of 2%; On or before the first day of March of the year 1970, the sum of 2% of the principal indebtedness, together with interest on the unpaid principal computed at the rate of $5\frac{1}{2}\%$ per annum, and on or before the first day of March of the years 1971, 1972, 1973, 1974, 1975, 1976, 1977, 1978, 1979, 1980, 1981, 1982, 1983, 1984, 1985, 1986, 1987, 1988 and 1989, a like sum of 2% of the principal indebtedness plus interest as shall have accrued from the last balance of principal indebtedness computed at the rate of $5\frac{1}{2}\%$ per annum, with the remaining indebtedness and accrued interest becoming due and payable on or before the first day of March, 1990. All installments of principal and/or interest not paid when due shall bear interest after due date at the rate of 10% per annum, the entire debt becoming due and payable at once in the event default continues for a period of sixty days. It is expressly stipulated and agreed that the amounts payable above have been stipulated based upon the present cost of living index as generally published in the Federal Reserve Bulletin issued by the Federal Board of Governors of the Federal Reserve System of Washington, and commonly known as the Bureau of Labor Statistics Index of Consumer Prices, and at the time of payment of any amount of principal herein named, the seller shall increase the installment payment by the same percentage as the cost of living index has increased from the date of delivery of the deed until payment of the installment of principal. This procedure shall be continued throughout the term used for collection of the installment payments. In the event the cost of living index decreases, the installment payments shall be binding in a lesser amount; this agreement being binding

upon the parties hereto, their administrators, heirs and assigns.

"This note is payable on or before due date with interest computed on the deferred balances until date of payment."

In May 1965, M & H Farms, Inc. entered into a contract to sell the land to Jack Osborn et al for more than twice the amount M & H paid for it. M & H Farms, Inc. was subsequently dissolved and the assets, including title to the land purchased from Mrs. McKinley, were vested in appellees as stockholders in M & H Farms, Inc. At the closing of the sale to Osborn et al, appellees attempted to pay the entire balance of the note to Mrs. McKinley and a dispute arose between Mrs. Mc-Kinley and appellees as to the terms of the promissory note. It was appellees' contention that $700,000.00 plus accrued interest was the balance owed, and Mrs. McKinley contended that an additional sum of $47,-402.59, representing the increase in the consumer price index, figured on the entire balance of the $700,000.00, was due in addition to the $700,000.00 balance on the note.

By agreement of the parties, this $47,402.59 was paid into an escrow account subject to disposition under court decree following judicial construction of the provision of the note, and by agreement, the sale to Osborn et al was completed. In construing the provisions of the note, the chancellor found as follows:

"[T]hat the Cost of Living Index provision contained in the Offer and Acceptance, Installment Promissory Note, and Warranty Deed was not intended to apply to the pre-payment of the entire purchase price nor would it have been applicable until the first day of March, 1970, the date the installment payments were to commence; that the Cost of Living Index provision was not intended to provide an increase or decrease in the total pur-

chase price of the property but was intended to provide only the method of payment of the installment principal payments coming due in March of the year 1970 and thereafter; that since the provision is not applicable under the facts of the case no ruling is necessary concerning the validity of the Cost of Living Index provision as contained in the instruments; that the escrow fund held by the First National Bank of DeWitt, Arkansas, under the Escrow Agreement, should be delivered by the bank to the Plaintiffs; and that the parties to this litigation should pay their own expenses."

The chancellor held that the promissory note had been paid in full and directed the First National Bank of DeWitt, as escrow agent, to pay the escrow account to appellees. On her appeal to this court Mrs. McKinley relies on the following points for reversal:

"The court erred in the ruling that the cost of living index provision contained in the offer and acceptance, installment promissory note and warranty deed was not intended to apply to the prepayment of the entire purchase price.

"The court erred in the ruling that the cost of living index provision was not intended to provide an increase or decrease in the total purchase price of the property, but was intended to provide only the method of payment of the installment principal payments coming due in March, 1970 and thereafter.

"The court erred in the ruling that under the facts of this case the cost of living index provision is not applicable as contained in the instruments."

The question presented in this case is clearly one of interpretation of the meaning of the language used in the offer and acceptance contract as carried forward in the provisions of the promissory note and deed of conveyance. We are of the opinion that the language

used is susceptible of no other logical interpretation than that given to it by the chancellor, and that the decree of the chancellor should be affirmed.

This property was under a five year lease when it was sold to M & H Farms, Inc. and the lease was assigned to M & H. The note is clear that only interest at 2% of the $700,000.00 principal indebtedness and amounting to $14,000.00 per annum, was to be paid for the first five years. The note is also clear that beginning on or before March 1, 1970, the payments of 2% were to continue but were to be applied on, and credited to, the *principal indebtedness* instead of interest, and the interest rate was to increase from 2% to 5½% per annum on the unpaid balance. There is no question that the principal indebtedness, at all times referred to, was $700,000.00.

The amount of payment on principal which was to begin on or before March 1, 1970, was not only designed to produce a steady annual receipt of payment on principal for a period of twenty years, but was designed to produce payments that would have the same purchasing power that $14,000.00 had at the inception of the transaction. In an attempt to accomplish this purpose, the note provided as follows:

> "The seller shall increase the *installment payment* by the same percentage as the cost of living index has increased from the date of delivery of the deed until payment of the *installment of principal*. This procedure shall be continued throughout the *term used* for collection of the *installment payments*. In the event the cost of living index decreases, the *installment payments* shall be binding in a lesser amount." (Emphasis supplied.)

It is obvious, that except for possible changes in the consumer price index, the annual payments on principal at 2% of the principal indebtedness would have remained constant at $14,000.00 each year for the twenty

year period from 1970 until 1990 when the balance of $420,000.00 with interest at 5½% on tnat amount for one year, would have become due and payable. In the event, however, that the consumer price index should change or fluctuate during the twenty year period the payments on principal were being made, the annual payments on principal would not have remained constant at 2% of the principal indebtedness of $700,000.00. In the event of change in the consumer price index, the percentage of such change would be added to, or subtracted from, the 2% or $14,000.00 annual payments on the principal indebtedness, thereby insuring that the comparatively small payments on the principal over the years would at all times have the same purchasing power as $14,-000.00 had when the note was executed. The 5½% interest rate on the remaining balance remained the same throughout, and is not involved here.

It is difficult to imagine how the parties could have set out their intentions any plainer than was done in this note. *Installment payments* are referred to throughout. There are only two items making up the "installments payments." (1) The 2% of the principal indebtedness amounting to $14,000.00 each year unless increased or decreased by a change in the consumer price index. (2) The interest as shall have accrued from the last balance of principal indebtedness computed at the rate of 5½%. It would, therefore, appear that the installment payments of 2% of the principal indebtedness amounting to $14,000.00 annually, would be all the parties could have had in mind as being subject to change by the consumer price index when this note was executed.

The substance of all the oral testimony is to the effect that Mr. McKinley, now deceased, was concerned about, and attempted to insure, the same purchasing power of the installments over the term of the note, as 2% of $700,000.00 had when the note was executed. The 5½% interest rate was based on the balance each year after the principal payment was deducted and the prin-

cipal payment each year was based on 2% of the principal indebtedness ($700,000.00), plus or minus the percentage of the rise or fall in the consumer price index.

Appellant insists that she and Mr. McKinley anticipated, and had discussed the possibility, that the sale of this land might bring in over a million dollars. Had the note been paid according to its terms over the entire period of twenty years, the sale of this land would have brought in well over one million dollars. The interest for 1970 alone would have amounted to $38,500.00, and assuming that no change had occurred in the consumer price index that would have affected the $14,000.00 paid each year in reduction of principal, the interest alone for the year 1990 would have amounted to $23,100.00. So it is readily seen that interest alone over the full term of the note might have amounted to over a half million dollars.

There is no question that the appellees had a right to pay the full principal indebtedness at any time, and this they did before the first installment on the principal indebtedness came due.

The decree of the chancellor is affirmed.

BYRD, J., disqualified and not participating.